**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | |
|---|---|
| Bryan M., <br><br> *Plaintiff*, <br><br> v. <br><br> Frank J. Bisignano, <br> Commissioner of Social Security, <br><br> *Defendant*. | Case No. 3:25-cv-50138 <br><br> Honorable Michael F. Iasparro |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bryan M. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

In September 2021, Plaintiff filed applications for supplemental security income and disability insurance benefits, alleging an amended disability onset date of July 16, 2022. R. 43, 240, 260. Following a hearing, an Administrative Law Judge ("ALJ") issued an unfavorable decision on February 2, 2024, finding that Plaintiff is not disabled. R. 17-31. The ALJ concluded that Plaintiff has the residual functional capacity ("RFC") to perform work at any exertional level with the following limitations:

> frequent handling and fingering with the left upper extremity; avoid concentrated exposure to workplace hazards including dangerous moving machinery and unprotected heights; avoid concentrated exposure to loud noise environments, windy environments, and extreme cold; avoid concentrated exposure to pulmonary irritants; can understand remember, and carry out simple instructions with sufficient persistence, concentration or pace to timely and appropriately complete job duties; can make simple work-related decisions; no fast-paced production rate or strict hourly quota requirements but can meet end-of-day requirements; and work away from the general public.

R. 22. The ALJ found that Plaintiff cannot perform any past relevant work but can perform other jobs that exist in significant numbers in the national economy. R. 29-30.

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 6.

1

The Appeals Council denied Plaintiff's request for review on January 22, 2025, making the ALJ's decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 416.1481. Plaintiff then filed this action seeking judicial review.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the Commissioner's decision for the ALJ's alleged failure to properly evaluate and support her RFC determination and her subjective symptom analysis. Dkt. 15. As explained in further detail below, the Court does not find that either of these alleged errors warrant remand.

1) RFC Determination

Plaintiff first argues that the ALJ violated Social Security Ruling ("SSR") 96-8p in determining Plaintiff's RFC. Dkt. 15. SSR 96-8p requires that the ALJ's RFC assessment "include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence." *SSR 96-8p: Assessing RFC in Initial Claims*, 1996 WL 374184, at *7 (July 2, 1996). Plaintiff alleges that the ALJ failed to comply with this requirement when she made conclusions about Plaintiff's ability to keep pace and to interact with others, as well as in reference to Plaintiff's physical impairments. "Notably, the RFC determination was more restrictive than what any state agency physician recommended—demonstrating the ALJ's careful deliberation." *Padua v. Bisignano*, 145 F.4th 784, 792 (7th Cir. 2025); *see also Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (same). In fact, there is no medical opinion in the record, from the state agency physicians or otherwise, that assesses any more restrictive limitations

2

than those set by the ALJ.[2] This is "[a] fundamental problem" in Plaintiff's argument. *Gedatus v. Saul*, 994 F.3d 893, 904 (7th Cir. 2021). Nonetheless, the Court will more fully address these arguments.

        a.   Pace

The ALJ determined that Plaintiff cannot maintain "production rate or strict hourly quota requirements but can meet end-of-day requirements." R. 23. Plaintiff alleges that this restriction "did not logically restrict the pace of the work" because the ALJ provided no explanation for how Plaintiff could be held accountable for daily goals if he is unable to maintain more periodic, hourly goals. Dkt. 15, at 5. This argument is unavailing.

All that is required of an RFC determination "is that the ALJ based his decision on such evidence that a reasonable mind could find adequate to support the ALJ's conclusion." *Lincoln v. Bisignano*, 173 F.4th 886, 892 (7th Cir. 2026). That is precisely what the ALJ did here. The ALJ recognized that Plaintiff is limited in his ability to concentrate and maintain pace as evidenced by his own allegations and mental status exams showing, at times, "variable" attention and concentration. R. 21. To accommodate this moderate limitation caused by Plaintiff's anxiety and PTSD, the ALJ limited Plaintiff "to work that is away from the general public and does not have fast-paced production rate or strict hourly quota requirements." R. 27. This conclusion "reflects adequate consideration of Plaintiff's medical history, . . . the assessments of several experts, and Plaintiff's own testimony." *Morales v. O'Malley*, 103 F.4th 469, 471 (7th Cir. 2024).

Nonetheless, Plaintiff suggests that there is an inherent conflict between an inability to maintain production rate and an ability to meet end-of-day requirements. Dkt. 15, at 6. But the Seventh Circuit has found that a similar RFC limiting a claimant to no fast-paced work but permitting more long-term goals "such as based on a daily or weekly or monthly quota" was sufficient to address a moderate concentration and pace limitation. *Hess v. O'Malley*, 92 F.4th 671, 678 (7th Cir. 2024). Plaintiff attempts to distinguish his situation from that contemplated by the Seventh Circuit by drawing a distinction between "goals," as described in *Hess*, and "requirements," as described here. Dkt. 25, at 3. However, Plaintiff cites no authority to support such a distinction.[3] *See Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021) ("The ALJ need

---

[2] At the hearing, Plaintiff's counsel suggested that the statement provided by Dr. Chudik (R. 709) should be classified as a medical opinion. R. 44. Plaintiff abandons this argument on appeal, presumably because, as the ALJ correctly explained, the statement provides little more than a statement "on an issue that is reserved to the Commissioner" which "is of no persuasive value." R. 29; *see also* 20 C.F.R. § 404.1520b(c).

[3] Notably, the *Hess* court analyzed an RFC that seemed to accept the interchangeability of the terms "goals" and "quotas" because it describes "a daily or weekly or monthly quota" as an appropriate "goal oriented" requirement that the claimant would be able to comply with despite an inability to keep up with a "fast paced production quota or rate." 92 F.4th at 676. Even if Plaintiff were correct that "goals" are different than "requirements," it is an even less persuasive argument that "quotas" are different than "requirements." *Contrast Goal*, Oxford English Dictionary, https://www.oed.com/dictionary/goal_n?tab=meaning_and_use#1208685740 [https://perma.cc/8YZ6-E3EP] (last visited July 10, 2026) ("an aim or outcome which a person . . . works towards or strives to achieve"), *with Quota*, Oxford English Dictionary, https://www.oed.com/dictionary/quota_n?tab=meaning_and_use#27195659 [https://perma.cc/WSS4-

not use any 'magic words' in formulating a person's [RFC]." (quoting *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019)). As such, the Court is persuaded by the Seventh Circuit precedent affirming similar RFC language and finds no error in the ALJ's integration of Plaintiff's pace limitation.

Alternatively, Plaintiff argues that he would not be able to perform the representative occupations relied on by the ALJ in step five based on the ALJ's RFC determination. Dkt. 15, at 7-9. Specifically, Plaintiff believes that his inability to work at a fast-paced production rate conflicts with the requirements of the routing clerk and sorter positions. *Id.* "Because [Plaintiff] did not identify any apparent conflicts at the time of the hearing, he now must demonstrate 'that the conflicts were obvious enough that the ALJ should have picked up on them without any assistance.'" *Surprise v. Saul*, 968 F.3d 658, 662 (7th Cir. 2020) (quoting *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)). Plaintiff relies on the job description from the Dictionary of Occupational Titles ("DOT") which describes the routing clerk position as one that *may* involve work with a conveyor belt. *DOT*, 222.687-022 Routing Clerk (4th ed. 1991), 1991 WL 672133. But this is not an obvious conflict. Plaintiff also relies on the job description from the Occupational Information Network ("O*NET") which describe the positions as involving "quick" movements. Dkt. 15, at 8. However, the ALJ was only required "to investigate and resolve any apparent conflicts between the VE's testimony and the *DOT*," not the O*NET.[4] *Weatherbee v. Astrue*, 649 F.3d 565, 570 (7th Cir. 2011); *Stephanie N. v. Comm'r of Soc. Sec.*, No. 4:19-cv-04122-SLD-JEH, 2020 WL 7234157, at *10 (C.D. Ill. July 29, 2020) ("The O*NET is not one and the same as the DOT, and SSR 00-4p only speaks of conflicts between occupational evidence provided by a VE and occupational information supplied by the DOT."). Accordingly, the Court finds that remand is not warranted on this basis.

### b. Interacting with others

The ALJ also determined that Plaintiff must "work away from the general public" but assessed no limitations on Plaintiff's ability to interact with supervisors and coworkers. R. 23. Plaintiff takes issue with this determination because "the evidence did not support the ALJ's finding that [Plaintiff] could interact with some people without issues but was unable to interact with others at all." Dkt. 15, at 9-11. But again, Plaintiff's argument misses the mark.

To succeed on appeal, Plaintiff "must demonstrate with references to evidence why the ALJ's determinations lack substantial support in the administrative record." *Morales*, 103 F.4th at 471. Here, Plaintiff provides no more than speculation, arguing that "*if* after proper evaluation of

---

9S6L] (last visited July 9, 2026) ("the part or share which an individual is *obliged* to contribute to a total amount" (emphasis added)), *and Requirement*, Oxford English Dictionary, https://www.oed.com/dictionary/requirement_n?tab=meaning_and_use#25901087 [https://perma.cc/VR5C-2WS5] (last visited July 9, 2026) ("something which is required or needed").

[4] Plaintiff also argues that there is an apparent conflict between his RFC and the routing clerk position description because of his limitation to avoid work hazards and restriction to simple instructions. Dkt. 15, at 7-8. However, these arguments are woefully underdeveloped, failing to cite any supporting authority and ignoring the fact that the DOT explicitly describes the position as having no exposure to moving mechanical parts, and are thus waived. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) ("[P]erfunctory and undeveloped arguments… are waived." (quoting *U.S. v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991))).

[Plaintiff's] allegations the ALJ determined he could also not interact with supervisors or coworkers, then he *may* have been found unable to perform any work." Dkt. 15, at 9 (emphasis added). This is not sufficient to show that the evidence "compels a contrary result" as is required. *Tutwiler*, 87 F.4th at 857 (quoting *Gedatus*, 994 F.3d at 900). Moreover, all the evidence Plaintiff points to in support of further limitations in interacting with others, "tearfulness, fear of going outside, and panic attacks," was properly considered and partially accepted by the ALJ. Dkt. 15, at 9; *see also* R. 21 (recognizing that Plaintiff reports experiencing panic attacks and "avoid[s] people as much as possible"); R. 25 (noting that Plaintiff was "frequently tearful" at his psychological consultative exam and reported to his psychiatrist that he was "afraid to go out"). The fact that the ALJ "did not assign the significance to it that [Plaintiff] prefers" does not show an error.[5] *Denton v. Astrue*, 596 F.3d 419, 426 (7th Cir. 2010); *see also Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (affirming where the ALJ "more than adequately discussed and rejected Plaintiff's evidence suggesting that she suffered a back impairment that would prevent her from performing light work").

       c.   Physical RFC

Plaintiff also finds fault in the ALJ's physical RFC determination for an alleged failure to adequately account for his ear pain. The ALJ considered Plaintiff's ear pain and credited Plaintiff's assertion that the pain was made "worse with exposure to loud noise, cold or wind." R. 27. To limit Plaintiff's exposure to these aggravating factors, the ALJ determined that Plaintiff should "avoid concentrated exposure to loud noise environments, windy environments, and extreme cold." *Id.* Plaintiff is correct that the ALJ did not include any restrictions to account for the base level of ear pain Plaintiff experiences absent these aggravating factors. However, this was not in error.

The "RFC is not the *least* an individual can do despite his . . . limitations or restrictions, but the *most*." *SSR 96-8p*, 1996 WL 374184, at *1 (emphasis in original). Thus, the mere existence of pain does not create the presumption that limitations must be assessed to account for that pain. Rather, Plaintiff was required to put forth evidence that his ear pain "caused any specific limitations." *Gedatus*, 994 F.3d at 905; *see also Osborne v. Saul*, No. 20-cv-212-jdp, 2020 WL 6390668, at *2 (W.D. Wis. Nov. 2, 2020) ("But missing from Osborne's argument is any explanation of why she believes that the level of pain she experiences is disabling or imposes limitations beyond those found by the ALJ."). The ALJ understood that Plaintiff experiences ear pain and took steps to limit aggravation of that pain but reasonably found that no limitations were needed to account for the pain itself. Plaintiff provides no basis for the Court to conclude that his ear pain prevents him from performing work within the bounds of the ALJ's RFC determination. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("The ALJ found that Jozefyk's memory and concentration were slightly impaired, but Jozefyk cites no evidence that those deficits keep him from performing simple, routine, and repetitive tasks."). Accordingly, the Court finds no error in the ALJ's physical RFC analysis.

---

[5] While not relied on by the ALJ, the Court does note that Plaintiff's testimony describes issues interacting "[w]ith people that [he doesn't] know." R. 63. Presumably, Plaintiff would come to know his coworkers and supervisors so that this would not be an issue.

2) Subjective Symptoms

Finally, Plaintiff argues that the ALJ failed to comply with SSR 16-3p in evaluating Plaintiff's allegations of his subjective symptoms. Dkt. 15, at 14-15. The Court "will overturn the ALJ's evaluation of a claimant's subjective symptoms only if it is 'patently wrong, which means that the decision lacks any explanation or support.'" *Pufahl v. Bisignano*, 142 F.4th 446, 458 (7th Cir. 2025) (quoting *Hess*, 92 F.4th at 679). The ALJ's evaluation in this case is not patently wrong.

The relevant regulations outline seven factors for ALJs to consider in their evaluation of a claimant's subjective complaints: (1) daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of medications; (5) treatments other than medications; (6) personal measures taken to relieve symptoms; and (7) other relevant factors. 20 C.F.R. § 404.1529(c)(3). Despite Plaintiff's contention to the contrary, and although not required to do so, the ALJ addressed most of the relevant factors in her opinion. *See Gedatus*, 994 F.3d at 903 ("[A]n ALJ need not discuss every detail related to every factor.").

The ALJ recognized that Plaintiff's reported activities of daily living involve "carrying out self-care activities" without assistance, preparing food in the microwave, and doing some household chores such as washing the dishes. R. 22. The ALJ addressed the second factor by, for example, recognizing that Plaintiff "has ongoing constant facial pain," "becomes short of breath after walking half a block or climbing a flight of stairs," and experiences panic attacks. R. 23. The ALJ recognized (and partially credited) Plaintiff's reports that his ear pain "is worse with exposure to loud noise, cold or wind" and that he experienced "shortness of breath on exertion." R. 26-27. The ALJ also recognized the type and effectiveness of Plaintiff's medications (e.g. Lexapro, Klonopin, inhalers, and Gabapentin), or lack thereof (e.g. no sleep assistive medications), as well as Plaintiff's own symptom-relieving measures (e.g. leaving the house late at night to avoid people). R. 21, 23, 25. The ALJ did not discuss Plaintiff's treatments other than medications, but Plaintiff has not pointed to evidence of any such alternative treatments. Even so, such an omission would not be evidence of a "patent" error requiring reversal where the ALJ's discussion of the other factors "had adequate supporting evidence." *Tutwiler*, 87 F.4th at 859. Thus, the Court finds that the ALJ has "said enough here to support [her] decision and permit meaningful appellate review" which is all that is required to meet "the most minimal of articulation requirements" to which the ALJ is subject. *Thorlton*, 127 F.4th at 1083 (quoting *Warnell*, 97 F.4th at 1053).

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reversal and remand is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: July 21, 2026              By: _____
                                        Michael F. Iasparro
                                        United States Magistrate Judge

6